Matter of Pearce (2026 NY Slip Op 00899)

Matter of Pearce

2026 NY Slip Op 00899

Decided on February 18, 2026

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 18, 2026
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ANGELA G. IANNACCI, J.P.
LINDA CHRISTOPHER
LILLIAN WAN
JAMES P. MCCORMACK, JJ.

2024-04438

[*1]In the Matter of Claire Pearce, also known as Claire Antoinette Pearce, deceased. Holly Pearce, respondent; Michael Pearce, appellant. (File No. 2735/19)

Michael Pearce, New York, NY, appellant pro se.
Greenfield Stein & Senior, LLP, New York, NY (Angelo M. Grasso and Gina M. Ciorciari of counsel), for respondent.

DECISION & ORDER
In a will construction proceeding, the objectant appeals from an order of the Surrogate's Court, Kings County (Bernard J. Graham, S.), dated March 14, 2024. The order granted those branches of the petitioner's motion which were for summary judgment construing Article SECOND of the last will and testament of Claire Pearce, also known as Claire Antoinette Pearce, to bequeath a lot located at 95 Park Place in Brooklyn to the petitioner and for an award of attorneys' fees payable from the residuary estate of Claire Pearce, also known as Claire Antoinette Pearce, and denied the objectant's cross-motion for summary judgment construing Article THIRD of the last will and testament of Claire Pearce, also known as Claire Antoinette Pearce, to include as part of the residuary estate of Claire Pearce, also known as Claire Antoinette Pearce, the lot located at 95 Park Place in Brooklyn.
ORDERED that the order is affirmed, with costs payable by the objectant personally.
Claire Pearce, also known as Claire Antoinette Pearce (hereinafter the decedent), died in 2019. The decedent was survived by her children, Holly Pearce (hereinafter the petitioner) and Michael Pearce (hereinafter the objectant), whom she designated as co-executors of her estate.
Article SECOND of the decedent's last will and testament provided that the decedent bequeathed to the petitioner her "primary residence at the time of [her] death." Article THIRD of the decedent's will divided the residuary of the decedent's estate equally between the petitioner and the objectant. At the time of her death, the decedent owned, among other things, two parcels of property in Brooklyn located at 107 6th Avenue and 95 Park Place, which were connected contiguously. The decedent resided in a two-family brownstone located at 107 6th Avenue (hereinafter the brownstone). The property upon which the brownstone was situated connected to an adjacent lot containing a backyard with a garden, a walking path, and a parking pad located at 95 Park Place (hereinafter the lot).
In February 2020, the petitioner and the objectant entered into a stipulation whereby, inter alia, the decedent's will was admitted to probate and they reserved their rights to commence [*2]a will construction proceeding concerning the ownership of the lot. In November 2020, the petitioner commenced this proceeding for the construction of Article SECOND of the decedent's will. In February 2021, the objectant filed an affidavit answering and objecting to the petition. In June 2022, the petitioner moved, among other things, for summary judgment construing Article SECOND of the decedent's will to bequeath the lot to her and for an award of attorneys' fees payable from the residuary estate of the decedent. The objectant opposed the motion and cross-moved for summary judgment construing Article THIRD of the decedent's will to include the lot as part of the residuary estate of the decedent. In an order dated March 14, 2024, the Surrogate's Court granted those branches of the petitioner's motion and denied the objectant's cross-motion, determining, inter alia, that the decedent's will bequeathed the lot to the petitioner. The objectant appeals.
"The cardinal rule of construction of a will is to carry out the intent of the testator" (Matter of Guide, 302 AD2d 387, 388; see Matter of Sochurek, 174 AD3d 908, 910; Matter of Levine, 136 AD3d 920, 921). "All rules of interpretation are subordinated to the requirement that the actual purpose of the testatrix is sought and effectuated as far as is consonant with principles of law and public policy" (Matter of Guide, 302 AD2d at 388; see Matter of Levine, 136 AD3d at 921). Intent is understood from the will as a whole, as well as the circumstances surrounding the will's creation (see Matter of Levine, 136 AD3d at 921; Matter of Guide, 302 AD2d at 388).
"[T]he best indicator of the testator's intent is found in the clear and unambiguous language of the will itself and, thus, where no ambiguity exists, [e]xtrinsic evidence is inadmissible to vary the terms of a will" (Matter of Phillips, 101 AD3d 1706, 1708 [internal quotation marks omitted]; see Matter of Cord, 58 NY2d 539, 544). "If, on the other hand, a provision of the will is ambiguous, extrinsic evidence is properly considered in discerning the testator's true intent" (Matter of Phillips, 101 AD3d at 1708 [internal quotation marks omitted]; see Matter of Peters, 230 AD3d 1540, 1542). "A latent ambiguity emanates from a situation where 'the equivocality of expression or obscurity of intention does not arise from the words themselves, but from the ambiguous or obscure state of extrinsic circumstances to which the words of the instrument refer, and which is susceptible of explanation by a mere development of extraneous facts without altering or adding to the written language or requiring more to be understood thereby than will fairly comport with the extraordinary or legal sense of the words made use of'" (Lerner v Lerner, 120 AD2d 243, 247, quoting 22 NY Jur, Evidence § 617, at 127; see Matter of Phillips, 101 AD3d at 1708; Teig v Suffolk Oral Surgery Assoc., 2 AD3d 836, 837).
Here, the Surrogate's Court properly determined that a latent ambiguity existed with respect to the phrase "primary residence." The plain meaning of the phrase is "[t]he place where a person lives most of the time," which is seemingly unambiguous on its face (Black's Law Dictionary [12th ed 2024], principal residence). However, while the petitioner contended that the decedent's "primary residence" consisted of the brownstone and the lot, which are contiguously connected, the objectant argued, among other things, that the lot is not part of the decedent's "primary residence," as the brownstone and the lot are legally separate properties that are assigned two separate lot numbers for tax purposes. Thus, the court properly considered extrinsic evidence to clarify the decedent's intent and to explain whether the lot was encompassed in the phrase "primary residence" as referenced in the decedent's will (see Matter of Phillips, 101 AD3d at 1708; see also Teig v Suffolk Oral Surgery Assoc., 2 AD3d at 837; Lerner v Lerner, 128 AD2d at 247).
Upon consideration of the extrinsic evidence, the petitioner established, prima facie, that the decedent intended the lot to be included as part of her "primary residence" (see Matter of Sochurek, 174 AD3d at 910; Matter of Levine, 136 AD3d at 921; Matter of Guide, 302 AD2d at 388). The petitioner established that not only were the brownstone and the lot physically connected, but that the decedent made no distinction between the two, always treating and using the brownstone and the lot as one property. In opposition, the objectant failed to raise a triable issue of fact. Accordingly, the Surrogate's Court properly granted that branch of the petitioner's motion which was for summary judgment construing Article SECOND of the decedent's will to bequeath the lot to her and denied the objectant's cross-motion for summary judgment construing Article THIRD of the decedent's will to include the lot as part of the residuary estate of the decedent.
The Surrogate's Court did not improvidently exercise its discretion in awarding the petitioner attorneys' fees payable from the residuary estate of the decedent (see Matter of Greatsinger, 67 NY2d 177, 184-185). Under the Surrogate's Court Procedure Act, "[i]n a proceeding to construe a will . . . the court may award to a fiduciary or any party to the proceeding such sum as it deems reasonable for his, her or its counsel fees and other expenses necessarily incurred in the proceeding" (SCPA 2302[6]). The petitioner was successful in this will construction proceeding, which was necessary to settle the decedent's estate (see Matter of Greatsinger, 67 NY2d at 182).
The objectant's remaining contention is without merit.
IANNACCI, J.P., CHRISTOPHER, WAN and MCCORMACK, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court